UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  08 - 21391 - CIV – JORDAN/McALILEY

AMERICAN EXPRESS BANK, LTD.,
a Connecticut corporation,


        Plaintiff,

vs.

CREDIT SUISSE, a Switzerland
corporation,

        Defendant.

_____/

**PLAINTIFF'S AMENDED MOTION FOR PRELIMINARY INJUNCTION AND**
**MEMORANDUM OF LAW IN SUPPORT**
(based on Lanham Act, Florida Uniform Trade Secrets Act, and Conversion)

Plaintiff, AMERICAN EXPRESS BANK, LTD. ("AEB"), pursuant to Federal Rule of Civil

Procedure 65(a), hereby amends its pending motion for the entry of a Preliminary Injunction against

Defendant, CREDIT SUISSE and seeks relief under the Lanham Act, 15 U.S.C. §§ 1116 and

1125(a)(1)(B), under the Florida Uniform Trade Secrets Act ("FUTSA"), and under the common law

of conversion.  This motion is based on AEB's Amended Complaint, which was also served today.

## I.      INTRODUCTION

AEB seeks an injunction: (1) under the Lanham Act to enjoin false and deceptive commercial

communications made by CREDIT SUISSE and its agents to clients of AEB's Miami office and to

clients of AEB's Geneva, Switzerland office;  (2) granting relief under the FUTSA to remedy

CREDIT SUISSE's misappropriation of trade secrets from the computer databases of the AEB

Miami office;  and (3) enjoining the ongoing exercise of dominion and control of the data from

AEB's Miami office by CREDIT SUISSE, in violation of Florida's common law of conversion.

## II.     BASIS FOR INJUNCTIVE RELIEF

### A.     Factual Background

1.      AEB is in the business of private banking, retail banking, and commercial and

corporate banking services.

2.      CREDIT SUISSE is also in the business of private banking, retail banking, and

commercial and corporate banking services.  CREDIT SUISSE is a direct competitor of AEB.

3.      In addition to maintaining offices in the Southern District of Florida, AEB maintains

a representative office in Santiago, Chile.  CREDIT SUISSE also maintains a representative office in

Santiago, Chile.

4.      Under applicable Chilean banking law, foreign banks such as AEB and CREDIT

SUISSE may maintain representative offices in Chile to act as business agents for the foreign banks.

 A representative office, however, is prohibited from performing acts in Chile which are exclusive to

the banking business, such as accepting deposits from clients, making loans, engaging in the

brokerage of money or credits represented by securities or negotiable instruments, acting as a

financial broker, opening checking accounts, and any other matter which is exclusive to the banking

business.  Representative offices in Chile may not charge any fees to clients for any activities

performed in Chile.

5.      Under Chilean banking regulations, a representative office of a foreign bank does not

form a different legal entity from its main office.  Instead, it acts in Chile for its main office in

another country.

6.      The Chilean AEB representative office is registered under the name of AEB.  It is the same legal entity as AEB in the United States, and AEB's Miami office.  The AEB representative office in Santiago, Chile office reports to AEB's Miami office.

7.      In order to comply with Chilean banking law, all account relationships and any delivery of funds by AEB clients residing in Chile to AEB occurred directly between the clients and the AEB banking offices elsewhere.

8.      Accounts of AEB's clients residing in Chile were maintained in the AEB offices in Miami, Florida and Geneva, Switzerland.  All of the money and other investable assets of AEB's clients which are the subject of this litigation are maintained in the AEB offices in Miami or Geneva, Switzerland.

9.      Many of the Chilean residents whose accounts are the subject of this lawsuit chose to have their AEB accounts located in AEB's Miami office, and filled out AEB account application forms in English for an AEB Miami office account.  These account forms specifically state that they are governed by Florida and United States contract and banking laws.

10.     Once an account application from a Chilean resident is received in Miami (no paper copy is maintained in Chile), the AEB-Miami office investigates the client's application for compliance with applicable United States banking laws.  If approved, the client's account is opened in Miami, and the client transfers assets to his new account at the AEB-Miami office.

11.     Thereafter, clients of the AEB Miami office, including those residing in Chile, receive account advice and investment recommendations from AEB Miami office personnel. Monthly account statements for AEB's Miami clients who reside in Chile are generated in Miami by the AEB Miami office.

12.     To comply with Chilean banking regulations, AEB does not maintain paper files regarding AEB Miami clients in AEB's representative office in Santiago.  Access to the client information is obtained by certain AEB employees in the Chile representative office by logging on to the password-protected computer databases in AEB's Miami office.

13.     The AEB Miami office maintains all original signed paper documents relating to its clients, including its clients who reside in Chile.  AEB's Miami office also maintains computerized databases with electronic copies of, among other things, account file documentation, customer account information (including statements of account), and proprietary analytical information regarding the account.

14.     The AEB representative office in Chile does not generate any income in Chile;  fees from such clients are treated as income of the AEB Miami office.

15.     Because of Chilean banking laws, CREDIT SUISSE (like AEB) is prohibited from providing banking services in Chile.  With respect to the clients CREDIT SUISSE now has who reside in Chile, banking services for these clients necessarily has to be performed outside of Chile.

16.     In or about February 2007, the American Express Company and Standard Chartered began negotiations for Standard Chartered's potential purchase of AEB from the American Express Company.

17.     On September 16, 2007, the American Express Company and Standard Chartered entered into an agreement for Standard Chartered's purchase of AEB from the American Express Company.  It was publicly announced at that time.  The purchase included the AEB Miami office, the AEB Chile representative office, and the AEB office in Geneva, Switzerland.  The purchase of AEB by Standard Chartered closed on February 29, 2008.

### B.      Credit Suisse's Scheme to Misappropriate
### AEB-Miami's Trade Secrets and Accounts

18.     In the summer of 2007, CREDIT SUISSE implemented a scheme to obtain the accounts of clients of AEB residing in Chile by accessing trade secret information and other confidential and proprietary banking information housed in the computer databases maintained in AEB's Miami office.   CREDIT SUISSE planned to do so with the cooperation of two or more disloyal AEB employees in AEB's Santiago, Chile office.   CREDIT SUISSE induced these employees to give it access to AEB's Miami computer databases by entering into a business relationship with them.

19.     In approximately December 2007, a CREDIT SUISSE representative named Daniel Rosenkranz ("Rosenkranz") was present in the AEB representative office in Chile for a period of approximately 10 days, without AEB's knowledge or permission.

20.     In December 2007, during Rosenkranz's intrusion in the AEB representative office in Chile, he and/or persons acting on his behalf and at his direction gave Rosenkranz unauthorized access to AEB's password-protected Miami computer databases. Rosenkranz copied trade secret information and confidential and proprietary client information therefrom in paper and computerized form.

21.     With the trade secret and confidential and proprietary client account information that Rosenkranz took from AEB's Miami computer databases, CREDIT SUISSE, through Rosenkranz and disloyal AEB employees, was able to contact clients of AEB's Miami office who reside in Chile and persuade those clients to close their AEB accounts and transfer their assets and accounts to CREDIT SUISSE.

22.      Using the misappropriated trade secret and confidential and proprietary client account information, CREDIT SUISSE and its Chilean agents were continuing to contact clients of AEB offices residing in Chile and urging them to direct the transfer of their accounts to CREDIT SUISSE. This activity occurred up until the entry of a Temporary Restraining Order by this Court on May 14, 2008, and has a substantial likelihood of recurring absent a preliminary injunction.

### C.      Credit Suisse's Lanham Act Violations

23.      After CREDIT SUISSE misappropriated AEB's trade secrets and confidential and proprietary customer banking information relating to clients of AEB who reside in Chile, CREDIT SUISSE and the disloyal AEB employees working in concert with it, contacted and told AEB-Miami and AEB-Geneva clients: (a) that Standard Chartered did not do private banking; (b) that Standard Chartered was not interested in Latin America; and (c) that after Standard Chartered purchased AEB, there would no longer be private banking capabilities for AEB clients residing in Chile.  These communications were knowingly false and are misleading "advertising or promotion" proscribed under 15 U.S.C. section 1125(a)(1)(B).  *See, e.g., National Artists Management Company, Inc. v. Weaving*, 769 F.Supp. 1224, 1235 (S.D.N.Y. 1991)(former executive's campaign of badmouthing her former employer to clients was "advertising or promotion" for purposes of  section 1125(a)(1)(B) of Lanham Act).

24.      Having made false claims about AEB's services and commercial activities, CREDIT SUISSE and persons acting in concert with CREDIT SUISSE told clients of AEB's Miami office and AEB's Geneva office that they should close their AEB accounts and transfer their assets and accounts to CREDIT SUISSE, and that they should complete paperwork to effect the transfer.

25.     The false statements by CREDIT SUISSE have resulted in customer confusion regarding AEB's products, services, and commercial activities.  In reliance upon the false statements, clients have transferred their accounts from AEB-Miami and AEB-Geneva to CREDIT SUISSE.

26.     Title 15 U.S.C. § 1125(a) [section 43 of the Lanham Act]  provides a civil remedy for "any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-- in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."

27.     Title 15 U.S.C. § 1116 provides that courts are "vested with jurisdiction of civil actions arising under this Act shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable . . . to prevent a violation under subsection (a) . . . of section 43 [15 USC § 1125]."

## D.     Common Law Conversion

28.     Under Florida common law, "conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Shelby Mut. Ins. Co. of Shelby, Ohio v. Crain Press, Inc*., 481 So.2d 501, 503 (Fla. 2d DCA 1985).  Here, absent entry of a preliminary injunction, CREDIT SUISSE will continue to exercise dominion and control over the confidential, proprietary and trade secret information which CREDIT SUISSE removed from AEB's Miami office computer databases.

7

### E.      Irreparable and Ongoing Harm

29.     As a result of CREDIT SUISSE's misappropriation of confidential and trade secret data from AEB's Miami office and violations of the Lanham Act, transfer orders from AEB's Miami office clients and AEB's Geneva office clients who were solicited by CREDIT SUISSE were continuing to be received up until the entry of a Temporary Restraining Order by this Court. These transfer orders requested that their AEB accounts be closed and virtually all direct that the clients' assets and accounts be transferred to CREDIT SUISSE. To date, over $162 million in assets under management have been lost, a majority of which was under management by the AEB Miami office.

### III.      MEMORANDUM OF LAW

#### A.      Florida and Federal Law Governs Each of the Claims in
AEB's Amended Complaint

CREDIT SUISSE has previously argued that AEB's state law claims under its original Complaint were governed by Chilean law. Although AEB disagrees, it is now clear that Florida and United States law, not Chilean law, apply to the federal and Florida claims in the Amended Complaint and to the issuance of a preliminary injunction sought herein. All of the state law claims in the Amended Complaint relate solely to client accounts held in the AEB Miami office.

AEB's federal claims are brought under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 and the Lanham Act, 15 U.S.C. § 1525. AEB's Lanham Act injunction claim is governed by 15 U.S.C. §§ 1116 and 1525. AEB and Credit Suisse are competitors in the field of private banking. The Lanham Act has extraterritorial application and permits injunctive relief in cases, such as here, where United States commerce is affected by a scheme to disseminate false and misleading communications about products, services, or commercial activities of the U.S. plaintiff. *See McBee v. Delica Co.*, 417 F.3d 107, 120 (1st Cir. 2005)(extraterritorial conduct by foreign defendants is

8

actionable under the Lanham Act "where the conduct has a substantial effect on United States commerce").   "The Lanham Act allows federal courts to enjoin extraterritorial conduct when necessary to prevent harm to commerce in the United States." *Scanvec Amiable Limited v. Chang*, 2003 WL 22597067 **9 (3d Cir. Oct. 15, 2003).[1]

Under section 145 of the Restatement, 2d of Conflict of Laws, FUTSA governs a diversity claim for the misappropriation of Florida trade secrets, taken from a computer databases in Miami, Florida via the Internet.   Under section 145, Miami is the only place of injury, which is determinative.   However, even if the place of the wrongful acts is to be considered, the Amended Complaint is clear that Florida is the jurisdiction in which CREDIT SUISSE actually accessed the computer data which is the subject of AEB's trade secret claim.   *See, e.g., United States v. Ivanov*, 175 F.Supp.2d 367 (D.Conn. 2001)(computer theft occurred at site of computer database, not in domicile of offshore hacker); *Peridyne Technology Solutions, LLC v. Matheson Fast Freight*, 117 F.Supp.2d 1366, 1372 (N.D. Ga. 2000)(exercising personal jurisdiction in Georgia over foreign defendants;   "[k]ey to the court's analysis is the allegation of tortious activity in Georgia via the Internet"); *American Crane & Tractor Parts, Inc. v. Regal Corp*. 2007 WL 4139465 (D.Kan. Nov. 16, 2007)(in Kansas corporation's suit under state trade secrets law, proof that Tennessee defendant "hacked" into Kansas computer would be sufficient to support exercise of *in personam* jurisdiction in Kansas). The law applicable to these state law claims is further set forth in AEB's Reply Memorandum, filed June 23, 2008, which is incorporated fully herein by reference.  [DE # 36].

---

[1] "[T]he 1989 amendments expand[ed] the Act to include commercial defamation claims. . . .  the 1989 amendments extend[ed] the reach of the Act to any false and misleading representations about the 'nature, characteristics, qualities or geographic origin of [any person's] goods, services or commercial activities.' " *Monoflo Int'l, Inc. v. Sahm*, 726 F.Supp. 121, 126 n. 10 (E.D.Va.1989).

Similarly, the tort of conversion is governed by Florida law, because Florida law determines ownership of the data in question.  *See, e.g., FMC Corp. v. Capital Cities/ABC, Inc*., 915 F.2d 300, 302 (7th Cir. 1990)(Under Restatement § 147, California law governed conversion claim relating to documents removed from plaintiff's California offices to Illinois, and California law governed plaintiff's right to ownership of the documents and continued to govern owner's rights despite defendants' tortious removal of documents to another jurisdiction).

### B.      AEB Meets the Requirements for a Preliminary Injunction

Under Federal Rule of Civil Procedure 65(a), the Court may grant preliminary injunctive relief if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction is issued; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.  *See, e.g., Burger King Corp. v. E-Z Eating 8th Corp.,* 2008 WL 384554, * 1 (S.D. Fla. Feb. 11, 2008)(granting preliminary injunction); *Cardile Brothers Mushroom Packaging, Inc. v. First Choice Produce, Inc.,* 2007 WL 4592251, *1 (S.D. Fla. Jan. 1, 2008)(granting preliminary injunction); *Merle Norman Cosmetics, Inc. v. Labarbera,* 2007 WL 3197659, *2 (S.D. Fla. Oct. 29, 2007)(granting preliminary injunction).

1.      AEB Has a Substantial Likelihood of Success on the Merits

AEB is seeking preliminary injunctive relief under the Lanham Act, under Florida Statutes §§ 688.001-688.009, and under the common law of conversion, as a result of CREDIT SUISSE's continuing misappropriation and use of AEB's trade secrets and confidential and proprietary customer and business information.   AEB can show likelihood of success under each theory.

a.      Lanham Act.   In violation of the Lanham Act, CREDIT SUISSE is making false and misleading claims about AEB's banking services, products, and commercial activities, causing confusion about AEB and causing clients of AEB's Miami office and clients of AEB's Geneva office to terminate their relationships with AEB.

b.      FUTSA.      Under FUTSA, this trade secret information misappropriated by CREDIT SUISSE from AEB's Miami office includes, but is not limited to: customer names and addresses and other private customer contact and personal information, customer account numbers, assets in each account, other customer financial information, investment mix in each account, and like information extracted from AEB's Miami office computer databases.  It also includes AEB's proprietary internal analysis of each client's risk ratings.

Florida Statutes Section 688.002(4) defines a "trade secret" as "information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

AEB-Miami's office databases and records containing customer lists, customer contact and personal information, customer account numbers, assets in each account, other customer financial information, investment mix, proprietary risk ratings, and like information, are clearly "trade secrets" under Florida law.   AEB's customer lists and related customer and financial information contained on its computer databases, were compiled at AEB's great effort and expense, derived actual or potential independent economic value from not being generally known or readily

11

ascertainable by proper means by others; this information was not publicly available.   Further, AEB

took reasonable steps under the circumstances to maintain the secrecy of, and to otherwise protect

this information.   As examples, this information was not maintained in files in the Chile

representative office, but was instead sent to AEB offices in Miami for safekeeping.  The only

access to this information from AEB's Chile representative office was by access to AEB's United

States computer databases through the use of passwords issued to AEB employees who had been

fully apprised of the duty to maintain the confidentiality of this information (and had agreed to abide

by this duty) before receiving their passwords.

Further, CREDIT SUISSE's actions clearly constitute "misappropriation" of these trade

secrets under Florida Statutes § 688.002.  CREDIT SUISSE acquired these trade secrets by sending

its representative / employee into AEB's Chile representative office to unlawfully and improperly

access and remove AEB's trade secrets from AEB's Miami computer databases.  To do so, CREDIT

SUISSE had to use the passwords and access of AEB employees who were working in concert with

Rosenkranz.  These disloyal employees were apparently induced by CREDIT SUISSE to breach

their duties to AEB to maintain the secrecy of this information.  CREDIT SUISSE therefore knew

that it acquired AEB's trade secret information by improper means.

FUTSA provides for injunctive relief in circumstances such as these.  *See, e.g.,* Fla.Stat. §

688.003.

c.      Conversion.   Under Florida common law of conversion, CREDIT SUISSE is

wrongfully exercising dominion and control over information from the AEB-Miami office computer

databases, removed from Florida, which is the property of AEB.

In these circumstances, AEB has a substantial likelihood of prevailing on the merits of its claim under the Lanham Act, for misappropriation of trade secrets under Florida's Uniform Trade Secrets Act, and under common law conversion.  This factor clearly weighs in favor of granting AEB's motion for preliminary injunction.  *See, e.g., Sethscot Collection, Inc. v. Drbul*, 669 So.2d 1076, 1078 (Fla. 3d DCA 1996)(trial court erred in failing to enjoin defendant's use of misappropriated active customer list).

2.      AEB Will Suffer Irreparable Injury

CREDIT SUISSE's unlawful and improper actions have already resulted in the transfer of well over a hundred million dollars in assets under management away from AEB's Miami office and AEB's Geneva office to CREDIT SUISSE.   Unless an injunction is entered, transfer orders will continue to be received by AEB both from agents of CREDIT SUISSE and from clients who were solicited by CREDIT SUISSE using the trade secret information that CREDIT SUISSE misappropriated from AEB.

This continuing pattern of misappropriation and use of AEB-Miami's trade secrets to solicit AEB's clients, places AEB's Miami office in immediate danger of being looted of substantially all of its  accounts held by clients who reside in Chile.  This could potentially result in the loss of all of AEB's business in Chile.  The threatened and/or imminent destruction of a most or all of a business constitutes irreparable harm which is protectable by preliminary injunction.  *See, e.g. Tri-State Generation and Transmission Association, Inc. v. Shoshone River Power, Inc.,* 805 F.2d 351, 356 (10th Cir. 1986); *Vencor, Inc. v. Shalala,* 1997 WL 1068208, *2 (N.D. Ga. Sept. 12, 1997).

Further, the false and misleading statements made by CREDIT SUISSE about the business of AEB's Miami and AEB's Geneva office, will foreseeably continue to cause customer confusion

about AEB and result in irreparable future injury to AEB's business.  *See, e.g., Specialty Chemicals & Services, Inc. v. Chandler,* 1998 WL 618583, *4 (N.D. Ga. Sept. 19, 1988).

AEB has no adequate remedy at law.  This factor clearly weighs in favor of granting AEB's request for preliminary injunctive relief.

<u>3.	Threatened Injury to AEB Outweighs any Arguable Injury to CREDIT SUISSE</u>

The balancing of hardships to the parties tips strongly in favor of AEB.  AEB spent large amounts of time, money and resources in developing its client base in Chile.  AEB's efforts and expenditures were and are continuing to be undermined by CREDIT SUISSE's misappropriation and improper use of trade secrets and confidential and proprietary customer and business information in the Miami AEB office's computer databases.  CREDIT SUISSE'S false and misleading statements to clients  are violative of the Lanham Act and have caused customer confusion to clients of both the AEB-Miami and AEB-Geneva offices, and were and are continuing to be injurious to AEB's reputation, thereby affecting commerce in the United States.

If CREDIT SUISSE is not enjoined from its continuing improper and unlawful use of AEB-Miami's trade secrets and confidential and proprietary customer and business information, its continuing false and improper statements regarding AEB, and its continuing efforts to mislead clients of the AEB-Miami and AEB-Geneva offices and encourage them to close their accounts and to transfer their assets and accounts to CREDIT SUISSE based upon CREDIT SUISSE's wrongful actions, AEB-Miami and AEB-Geneva will continue to lose clients and are in danger of being looted of substantially all of the AEB accounts and assets with clients residing in Chile.  Further, absent an injunction, CREDIT SUISSE's actions will likely cause additional customer confusion regarding the products and services offered by AEB.

An injunction will not harm CREDIT SUISSE.  CREDIT SUISSE has already profited from its unlawful scheme to obtain clients of the AEB-Miami office and the AEB-Geneva office who reside in Chile, its unlawful and improper misappropriation of AEB's trade secrets and confidential and proprietary customer and business information, and its false and misleading statements about AEB.  Any potential loss to CREDIT SUISSE as a result of an injunction would simply be a result of CREDIT SUISSE's decision to knowingly misappropriate AEB's trade secrets and confidential and proprietary customer and business information, and make false and misleading statements about AEB.  An injunction would simply restrain CREDIT SUISSE from its continuing violation of the law.  CREDIT SUISSE cannot suffer any compensable harm when enjoined from unlawful activity. *See, e.g., Specialty Chemicals & Services, Inc. v. Chandler,* 1998 WL 618583, *4 (N.D. Ga. Sept. 19, 1988)("[d]efendants cannot suffer compensable harm when enjoined from unlawful activity").

The balancing of the harms clearly weighs in favor of granting AEB's motion for preliminary injunction.

4.        A Preliminary Injunction Would Not be Adverse to the Public Interest

The entry of a preliminary injunction would promote the public interest by upholding the laws which protect against misappropriation of trade secrets and confidential and proprietary customer and business information.  Further, the law is clear that the public interest favors enjoining false statements.  The public interest is most decidedly in favor of restraining parties, such as CREDIT SUISSE, from engaging in reprehensible business practices described herein.

The public interest is in favor of protecting business investments and confidential customer information, particularly in the highly sensitive investment industry.  *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lovekamp,* 2001 WL 810749,*4 (N.D. Fla. July 16, 2001).  *See also Merrill*

15

*Lynch, Pierce, Fenner & Smith, Inc. v. Dunn,* 191 F.Supp.2d 1346, 1354-55 (S.D. Fla. 2002)

(issuance of an injunction prohibiting defendants from using or disclosing plaintiff's confidential

customer information or soliciting plaintiff's clients and encouraging them to transfer their accounts

was not adverse to the public interest).

Therefore, the entry of a preliminary injunction would not be adverse to the public interest.

This factor also weighs heavily in favor of the entry of the preliminary injunction requested by AEB.

### C.        An Injunction May Proscribe Offshore Conduct

It is well-established that "[a] federal court can enjoin activity outside the United States."

*Kraft General Foods, Inc. v. BC-USA, Inc*., 840 F.Supp. 344, 351 (E.D.Pa.1993). *See also Franklin*

*Mint Corp. v. Franklin Mint, Ltd.*, 360 F.Supp. 478, 482 (E.D.Pa.1973):

> The fact that the advertisement in question was placed in a British newspaper does
> not hinder this court's power to impose liability for violation of the injunction. In
> *United States v. Aluminum Co. of America et al*., 148 F.2d 416, 443 (2d Cir. 1945),
> the court stated:
>
> > ... It is settled law ... that any state may impose liabilities, even upon persons
> > not within its allegiance, for conduct outside its borders that has
> > consequences within its borders which the state reprehends; and these
> > liabilities other states will ordinarily recognize. (citations and internal quotes
> > omitted).

In a very similar situation, the Supreme Court of the United States rejected the same

argument that Credit Suisse advances here.  In *United States v. First Nat. City Bank*, 379 U.S. 378,

85 S.Ct. 528 (1965) the district court entered a temporary restraining order which required the bank

to freeze assets located in its Montevideo, Uruguay branch.  The bank argued that the federal court

lacked power to reach assets outside the territorial boundaries of the United States.  Justice Black,

writing for the 7-member majority, disagreed with the bank and held:

16

> The branch bank's affairs are, therefore, as much within the reach of the in personam order entered by the District Court as are those of the home office. Once personal jurisdiction of a party is obtained, the District Court has authority to order it to 'freeze' property under its control, whether the property be within or without the United States.

379 U.S. at 384, 85 S.Ct at 531 (emphasis supplied).

There is no limitation on the power of federal courts to enjoin the litigants before them, including acts physically outside the boundaries of the United States.  *E.g., Steele v. Bulova Watch Co.*, 344 U.S. 280, 283-87, 73 S.Ct. 252, 97 L.Ed. 319 (1952)(Lanham Act "confers broad jurisdictional powers" upon the federal courts to enjoin infringing activities committed outside the territorial limits of the United States).  Federal courts have enjoined the offshore behavior of litigants before them in bankruptcy, labor, copyright, and fraud cases.

### D.      Bond

Because CREDIT SUISSE would not suffer any damage or injury by being restrained from continuing to benefit from its wrongful and unlawful conduct, AEB requests that only a nominal bond be required in connection with the entry of a preliminary injunction.[2]

### IV.      CONCLUSION

WHEREFORE, Plaintiff AEB respectfully requests that this Court enter a preliminary injunction providing that CREDIT SUISSE, as well as its officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with any of these parties (including but not limited to former AEB employees assisting CREDIT SUISSE in Lanham Act violations, FUTSA violations, and conversion) be preliminarily enjoined from: (a) any and all continued use of AEB-Miami's trade secrets and confidential and proprietary customer and business

---

[2] AEB's $10,000 bond remains in place in connection with the Temporary Restraining Order.

17

information, and that it be required to immediately return all such information to AEB; (b) accepting any further transfers of accounts or assets from any clients of AEB-Miami or AEB-Geneva who reside in Chile; (c) providing any further compensation to any former AEB employees, their new business, and/or any directors, officer, employees, agents, or representatives of that business in connection with any accounts or assets transferred from AEB client accounts; and (d) making any further false and misleading statements about AEB's business, including but not limited to, statements that AEB does not provide private banking services, that AEB is not interested in Latin America, and/or that AEB cannot and will not provide private banking services to clients who reside in Chile.

Dated this the 25th day of June, 2008.

s/Patricia A. Leonard
James W. Beasley, Jr.
Florida Bar No. 145750
Patricia A. Leonard
Florida Bar No. 0065455
**BEASLEY HAUSER
KRAMER LEONARD
& GALARDI, P.A.**
505 South Flagler Drive, Suite 1500
West Palm Beach, Florida 33401
(561) 835-0900 / (561) 835-0939 fax
leonard@beasleylaw.net
Counsel for Plaintiff

18

## CERTIFICATE OF SERVICE

I hereby certify that on this the 25th day of June, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:     s/Patricia A. Leonard_____
James W. Beasley, Jr. (145750)
Patricia A. Leonard (0065455)
Leonard@Beasleylaw.net
BEASLEY HAUSER
KRAMER LEONARD
& GALARDI, P.A.
505 South Flagler Drive, Suite 1500
West Palm Beach, Florida 33401
Telephone: (561) 835-0900
Facsimile: (561) 835-0939

**SERVICE LIST**
**American Express Bank Ltd v Credit Suisse**
**Case No. 08-21391-Civ-Jordan / McAliley**
**United States District Court, Southern District of Florida**

**Christopher R. Pace, Esq.**,
Christopher.pace@weil.com
Weil, Gotshal & Manges, LLP,
1395 Brickell Avenue, Suite 1200,
Miami, Florida 33131
Telephone: (305) 416-3700
Facsimile: (305) 577-7159
*Attorneys for Defendant Credit Suisse*
[Notices of Electronic Filing]